UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
RICHARD KOLLE,

                Plaintiff,

      -against-

MAINSHIP CORPORATION,

                Defendant.
---------------------------------------------------------------X

04-CV-711
(TCP)(MLO)

MEMORANDUM
AND
ORDER

PLATT, District Judge.

        Before the Court is a Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure by Defendant, Mainship Corporation ("Defendant" or "Mainship"). For the following reasons, Defendant's motion is GRANTED IN PART and DENIED IN PART.

### BACKGROUND

        Mainship is a Florida corporation engaged in the manufacture and sale of recreational boats. Hankins Aff. at 1. Mainship sells its boats exclusively to dealers, who in turn sell directly to consumers. Hankins Aff. at 2. On March 27, 2002, Mainship sold a 2002 Model 390 Trawler (the "vessel") to C&S Yacht Sales, Inc., an independent boat dealer located in Bay Shore, New York, which does business as Long Island Yacht Sales ("LIYS"). Hankins Aff. at 2; Def.'s

1

Exh. A. Mainship has no ownership interest in or corporate relationship with LIYS. Hankins Aff. at 2; Def.'s Exh. B.

On June 1, 2002, Plaintiff, Richard Kolle ("Plaintiff" or "Kolle"), purchased and took delivery of the vessel from LIYS. Kolle Aff. at 2. At the time of purchase, Kolle completed Mainship's Warranty Registration form, Pre-Delivery Service Record, and Care of Vessel and Warranty Procedure form, which were required for the vessel's limited warranty to take effect ("the Warranty"). Kolle Aff. at 2; Def.'s Exh. C. These documents were properly forwarded to Mainship and the Warranty was registered on June 2, 2002. Hankins Aff. at 3.

The Care of Vessel and Warranty Procedure is a form generated by LIYS, which informs the customer of the salient points of the Warranty and advises the customer to read and review the Warranty. Def.'s Exh. C. Essentially, the Warranty provides for a one year limited warranty for any part manufactured by Mainship for defects caused by faulty workmanship or materials. Def.'s Exh. C. Mainship also warrants that the hull of each vessel will be free from structural defects in materials and workmanship for a period of five years. Def.'s Exh. C. The Warranty includes a number of restrictions applicable to the express limited warranties. Specifically, the limited warranties do not cover, in relevant part, performance characteristics. Def.'s Exh. C. Further, in

bold print and capital letters, the Warranty provides:

> **THESE LIMITED WARRANTIES ARE YOUR SOLE AND EXCLUSIVE REMEDIES AND ARE EXPRESSLY IN LIEU OF ANY AND ALL OTHER REMEDIES AND WARRANTIES EXPRESS[ED] AND IMPLIED, INCLUDING THE WARRANTIES OF MERCHANTABILITY AND FITNESS.**

Within one week of the vessel's delivery, Plaintiff alleges that he noticed several major manufacturing defects and poor workmanship. Kolle Aff. at 2-8. Between June of 2002 and February of 2004, Plaintiff and Mainship exchanged correspondence and communicated extensively about the defects and problems that Plaintiff alleged with the vessel. Pl.'s Exh. C. On October 23, 2002, and again on February 6, 2004, Plaintiff sent letters to Defendant revoking his acceptance of the vessel. Kolle Aff., Exh. D. Many of the complained of defects and problems have been remedied by Mainship, even if outside of the terms of the Warranty; there are others, however, that remain unremedied. Mainship has communicated to Plaintiff its willingness to remedy a number of outstanding problems.

## **DISCUSSION**

Plaintiff's Complaint alleges five causes of action: (i) a violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et. seq. (the "MMWA"); (ii) a breach of Mainship's express warranty; (iii) a breach of the implied

warranty of merchantability; (iv) a breach of the implied warranty of fitness; and (v) a claim for rescission of the contract and revocation of Plaintiff's acceptance of the vessel.

Defendant moves for summary judgment on all causes of action asserted in the complaint. Plaintiff's first cause of action under the MMWA includes violations of implied warranties of fitness and merchantability. Defendant first argues that Plaintiff is unable to state a claim under the MMWA. With respect to Plaintiff's first, third and fourth causes of action for breaches of the implied warranties of merchantability and fitness, Defendant asserts that there are three distinct reasons why Plaintiff cannot maintain a cause of action for breach of an implied warranty: (i) there is no privity between Plaintiff and Mainship; (ii) the Uniform Commercial Code, as adopted by New York, provides for the exclusion of implied warranties; and (iii) Plaintiff has suffered no damages. Defendant further asserts that Plaintiff's recovery, if any, on the express warranty claims articulated in the second cause of action is limited to a warranty claim for damage to the vessel itself. Defendant also argues on the grounds of lack of privity that Plaintiff's fifth cause of action for rescission and revocation of the contract cannot stand; and that in any event, Plaintiff has not stated a claim for rescission or revocation because he has failed to tender possession of the vessel to the seller.

I. Implied Warranty Claims

The MMWA provides a private right of action for consumers who are damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation arising under a written warranty, implied warranty or service contract. 15 U.S.C. § 2310(d)(1). The MMWA is the governing law when a warrantor issues a full written warranty. See 15 U.S.C. § 2304(a)(4) (a full warranty must include a choice of a refund or replacement without charge for a defective product). When a warrantor, however, as in the case at bar, issues a limited written warranty, the MMWA provides that the Court must look to State law to determine a plaintiff's entitlement to damages or other equitable remedies. See 15 U.S.C. § 2310(d); Murphy v. Mallard Coach Co., 179 A.D.2d 187, 194 (3d Dep't 1992).

The parties do not dispute that Mainship issued a limited written warranty or that New York law applies.[1] Their main point of contention lies in the effectiveness of Mainship's attempt to disclaim implied warranties as part of its limited written warranty. Plaintiff contends that under 15 U.S.C. § 2308(a) ("Section 2308"), where a written warranty is issued, the warrantor may not

---

[1] Given that Plaintiff conceded at oral argument that Defendant offered a limited written warranty, Plaintiff's claims as alleged in paragraphs 26-28 of the Complaint must fail, as Section 2304(a) outlines the federal minimum standards for full warranties and Defendant offered a limited warranty. See Tr. at 13.

disclaim implied warranties. Defendant argues that implied warranties arise only as permitted by State law, and that under the applicable State law, Defendant's disclaimer was effective.

Section 2308(a) states:

> No supplier may disclaim or modify (except as provided in subsection (b) [governing limitations on the duration of implied warranties]) any implied warranty to a consumer with respect to such consumer product if (1) such supplier makes any written warranty to the consumer with respect to such consumer product, or (2) at the time of sale, or within 90 days thereafter, such supplier enters into a service contract with the consumer which applies to such consumer product.

Simply relying upon Section 2308(a), however, as Plaintiff does, does not end the inquiry. The term "implied warranty" is defined in Section 2301.

Section 2301(7) defines an implied warranty as "an implied warranty arising under State law (as modified by Sections 108 and 104(a) [governing full warranties]) in connection with the sale by a supplier of a consumer product." 15 U.S.C. § 2301(7). Under New York law, the Uniform Commercial Code ("UCC") governs the status of implied warranties and the ability of a warrantor to disclaim such warranties. See Novosel v. Northway Motor Car Corp., 460 F. Supp. 541, 545 (N.D.N.Y. 1978) (noting that New York adopted the UCC in 1964).

New York's UCC provides for two forms of implied warranties –

an implied warranty of merchantability under UCC § 2-314 and an implied warranty of fitness for a particular purpose under UCC § 2-315. UCC § 2-316, however, authorizes the exclusion of both express and implied warranties so long as the exclusion is specific, clear, and timely. UCC § 2-316 provides in relevant part:

> (2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."
>
> (3) Notwithstanding subsection (2)
>
> (a) unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is", "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty; and
>
> (b) when the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him; and
>
> (c) an implied warranty can also be excluded or modified by course of dealing or course of performance or usage of trade.

As stated in UCC § 2-316, the exclusion of implied warranties

must also be conspicuous. The common practice of setting forth such language of limitation in large, boldface, type, often in an eye-catching location apart from any boilerplate paragraphs of the agreement, meets this requirement and is enforceable. See Commercial Credit Corp. v. CYC Realty, Inc., 102 A.D.2d 970, 972 (3d Dep't 1984). The question of whether a particular disclaimer is conspicuous is a question of law to be determined by the Court. Carbo Industries, Inc. v Becker Chevrolet, Inc., 112 A.D.2d 336 (2d Dep't 1985).

Plaintiff relies upon Abraham v. Volkswagen of America, Inc., 795 F.2d 238 (2d Cir. 1986), in support of his novel conclusion that Defendant may not disclaim any implied warranty whatsoever when offering a written warranty. Abraham, nonetheless, does not support Plaintiff's argument; Plaintiff ignores the holding of that case. Abraham described in great detail the legislative history concerning the development of Section 2308. Id. at 247-249. The Second Circuit noted, in the context of privity requirements, that the legislative history of the provisions regarding implied warranties supports the view that State requirements applicable to implied warranties were not supplanted by the MMWA. Id. The Court referred to a 1973 Senate Report, which stated:

> It is not the intent of the Committee to alter in any way the manner in which implied warranties are created under the Uniform Commercial Code. For instance, an implied warranty of fitness for particular purpose which might be created by an installing supplier

8

> is not, in many instances, enforceable by the consumer against the manufacturing supplier. The Committee does not intend to alter currently existing state law on these subjects.

S. Rep. No. 151, 93d Cong., 1st Sess. 6 (1973) at 21. After analyzing the legislative history, the Abraham court concluded that State law, including privity requirements, governs implied warranties except where explicitly modified by Sections 2308 and 2304(a). 795 F.2d at 249.

Thus, under Abraham, State law, in this case New York's UCC, governs implied warranty claims. Although New York law does provide for implied warranties in consumer transactions, under UCC § 2-316, implied warranties may be disclaimed. Plaintiff did not argue in his papers or at oral argument that Mainship's exclusion of implied warranties was not conspicuous, nor could he as the exclusion is printed in boldface type, in all capital letters, under the boldface heading "Restrictions Applicable to Warranties."[2] Moreover, the substance of the exclusion is also clear and conspicuous. It states, "These limited warranties are your sole and exclusive remedies and are expressly in lieu of any and all other remedies and warranties express[ed] and implied, including the warranties of merchantability and fitness." This first sentence of the

---

[2] In fact, at oral argument, Plaintiff did not even attempt to address Defendant's argument that Defendant had validly disclaimed any implied warranties under the UCC.

9

exclusion is more than adequate to disclaim any implied warranties under New York law. See Architectural Aluminum Corp. v. Macarr, Inc., 70 Misc. 2d 495 (Sup. Ct. N.Y. County 1972) (finding that boldfaced typed warranty which stated warranty "is exclusive and in lieu of all other warranties of quality, whether written, oral or implied (including any warranty of merchantability or fitness for purpose)" was sufficiently conspicuous disclaimer).

In addition, Plaintiff does not contend that the implied warranty was modified by a course of dealing or course of performance. See Pl.'s Opp. Mem. at 11 (where Plaintiff asserts that the express warranty for a one-year period was extended orally by Mainship for an additional year). Again, Plaintiff only contests Defendant's ability to exclude implied warranties.

Because Defendant validly disclaimed the implied warranties which arise under New York law, the portions of Plaintiff's first cause of action relying upon the breach of an implied warranty under the MMWA and Plaintiff's third and fourth causes of action for breach of implied warranties must fail.

Having determined that Plaintiff has not stated a cause of action for breach of an implied warranty, the Court need not consider Defendant's additional asserted ground for the grant of summary judgment, namely that Plaintiff cannot demonstrate privity between himself and Mainship. It is clear

that New York law requires privity in order for Plaintiff to assert a breach of an implied warranty claim. See Jaffee Assoc. v. Bilsco, 58 N.Y.2d 993 (1983); County of Suffolk v. LILCO, 728 F.2d 52, 63 (2d Cir. 1984); County of Westchester v. General Motors, 555 F. Supp. 290 (S.D.N.Y. 1983).

If the Court were to consider such an issue, the Court would find that Plaintiff has not established privity between himself and Mainship for purposes of establishing an implied warranty claim. Plaintiff argued that privity was established as a result of the communications between himself and Mainship in the post-purchase period. See Pl.'s Exh. D. Plaintiff also relied upon an agency theory, which he claims arose as a consequence of the Dealer Agreement between Mainship and LIYS. See Def.'s Exh. B.

Briefly, with respect to Plaintiff's agency theory for the creation of privity of contract for his implied warranty claims. The Dealer Agreement between LIYS and Mainship makes clear that Mainship and LIYS are separate entities. See Def.'s Exh. B. Moreover, the cases cited by Plaintiff in support of this argument belie his claim. It is undisputed that Plaintiff had no contact with Mainship prior to the purchase of the vessel. Contacts between Mainship and Plaintiff in the post-purchase period are insufficient under an agency or apparent authority theory to create privity with respect to implied warranties. See Fletcher

v. Atex, Inc., 68 F.3d 1451 (2d Cir. 1995); Gordon v. Ford Motor Co., 239 A.D.2d 156 (1st Dep't 1997). Thus, the Court finds that Plaintiff is unable to establish privity on an agency or apparent-authority theory.

In support of his argument that privity may be established through the post-purchase activities of a manufacturer, Plaintiff relies upon Falker v. Chrysler Corp., 119 Misc. 2d 375 (Civ. Ct. N.Y. County 1983). Falker, a decision of the Small Claims Court, held that where the manufacturer had communicated directly with the purchaser in the post-purchase period by issuing warranty registration materials, the manufacturer's post-purchase actions gave rise to a contractual privity relationship with the plaintiff, which overcame any original purchase gap in privity. Id. at 379. Central to that court's decision, notably, was the fact that the manufacturer had not made any effort to disclaim implied warranties. Id. at 380. As Falker is not binding on this Court and also is devoid of any authority in support of its conclusion that privity was created by the post-purchase issuance of warranty materials, this Court declines to follow its holding.

Moreover, to the extent that Falker suggests that the issuance of an express warranty by a manufacturer creates privity for all purposes with an ultimate consumer, it is inconsistent with the weight of the law in New York. Leonard v. Tollycraft Corp., 1989 U.S. Dist. LEXIS 12363, at *13 (S.D.N.Y. Oct.

19, 1989) (citing County of Chenango Indus. Dev. Agency v. Lockwood Greene Eng'rs, 114 A.D.2d 728, 730 (3d Dep't 1985) (enforcing express warranty but rejecting implied warranty claim for lack of privity)). In fact, Falker appears to be the only case of which the Court is aware, which has held that despite a gap in privity, privity arose nonetheless because of the post-purchase issuance of a warranty card.

In addition, the Court declines to follow Falker for another reason. Falker references UCC § 2-318, which provides for the extension of warranties to remote consumers injured by a breach of a warranty if it is reasonable to expect that such person will use, consume or be affected by the product at issue. Although courts have recognized that under Falker and UCC § 2-318, the definition of privity may be broadening, these courts have also recognized that where only economic loss is alleged, implied warranties do not run to remote purchasers. See, e.g., Piper Acceptance Corp. v. Barton, 1987 U.S. Dist. LEXIS 175, at *5 (S.D.N.Y. Jan. 7, 1987) (granting motion for summary judgment on implied warranty claims where plane at issue was not purchased directly from manufacturer and purchaser made no allegation of personal injury; further finding that in any event and despite claim of privity, implied warranties were adequately disclaimed under UCC § 2-316(2)). To the extent that Falker relied upon UCC § 2-318 in finding privity, this Court believes that such a decision is in error. See

Hole v. General Motors Corp., 83 A.D.2d 715 (3d Dep't 1981); Maure v. Fordham Motor Sales, 98 Misc. 2d 979 (Civ. Ct. N.Y. County 1979).

For these reasons, the Court grants Defendant's motion for summary judgment with respect to Plaintiff's First, Third, and Fourth causes of action.

II.     Express Warranty Claim

Plaintiff's second cause of action asserts a claim for breach of Mainship's express written warranty. Defendant does not explicitly argue that it is entitled to complete summary judgment on this cause of action. Rather, Defendant urges the Court to hold that Plaintiff's recovery on an express warranty claim is limited by the East River doctrine to damage to the vessel itself. East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 871 (1986) (holding that because plaintiffs only alleged economic losses, plaintiffs' claims were limited to warranty claims). Plaintiff concedes the point by stating that he has raised only contractual claims, and not claims sounding in tort, which would be limited by the East River doctrine. Pl.'s Opp. Mem. at 18.

Next, Defendant urges the Court to conclude that the express warranty claim raised by Plaintiff relates to "performance characteristics," which are excluded from Mainship's limited written warranty. On this issue, Plaintiff has raised a plethora of material issues of fact. The parties dispute, for example,

whether the vessel actually has defects; whether the problems Plaintiff alleges with the vessel are performance related or otherwise; and whether the express warranty was extended by a verbal representation by Michael Hankins, Mainship's Director of Customer Relations. Because of these unresolved disputes, summary judgment would be inappropriate on Plaintiff's express warranty claim.

Moreover, the Court is unconvinced by Defendant's argument that Plaintiff should be precluded from raising as a part of his claim for breach of the express warranty the alleged defect to the sanitary system, which was discovered during an inspection by Plaintiff's boat yard during the summer of 2005. Kolle Aff. at p. 3-4. The odor from and problems with the vessel's sanitary system were brought to Defendant's attention within weeks of when Plaintiff took possession of the vessel. Pl.'s Exh. D. The vessel was inspected on a number of occasions by Defendant, although apparently not thoroughly enough to have detected the source of the problem. By all appearances, the problem seems to be related to a defect in workmanship and was certainly raised during the warranty period. Defendant should not rewarded for its inability to conduct a thorough investigation and discover the source of the odor during the warranty period.

For these reasons, Defendant's motion for summary judgment on Plaintiff's second cause of action is denied.

III.     Revocation and Rescission

Plaintiff's fifth cause of action is for revocation of acceptance and rescission of the contract. Plaintiff requests as damages the difference in value between the vessel as delivered and its value had it been as warranted by Mainship, as well as incidental and consequential damages. Defendant asserts that this cause of action is completely without merit as: (i) there is no privity between Plaintiff and Mainship; and (ii) Plaintiff did not validly revoke his acceptance of the vessel.

Under New York law, privity of contract is not required for a plaintiff to assert a cause of action for revocation of acceptance as against the manufacturer. The "absence of privity does not bar application of the remedy of revocation of acceptance for breach of a limited written warranty under the MMWA." Shuldman v. Daimler Chrysler Corp., 1 A.D.3d 343, 344-45 (2d Dep't 2003) (citations omitted). The MMWA makes a warrantor directly liable to a consumer for breach of a written warranty, regardless of privity. Id. at 345. Thus, the Court need not engage in an analysis of whether Plaintiff and Mainship were in privity.

Next, the Court must consider whether Plaintiff's actions and correspondence were sufficient to revoke his acceptance of the vessel. Defendant contends that Plaintiff has failed to satisfy the conditions required for revocation

16

of acceptance. Defendant argues that under UCC §§ 2-602 and 2-608, Plaintiff is required to make a complete tender of ownership of the vessel to the seller. See Curtis v. Fordham Chrysler-Plymouth, 81 Misc. 2d 566, 568 (Civ. Ct. Bronx County 1975). Plaintiff must also revoke his acceptance within a reasonable time and "before any substantial change in condition of the goods which is not caused by their own defects." UCC 2-608(2). In the instant case, Plaintiff admittedly is still in possession of the vessel and has expended over 440 hours of engine running time since taking possession of the vessel in June of 2002. Hankins Aff. at p. 27-30.

Plaintiff stated at oral argument that Plaintiff's revocation of acceptance occurred first by letter in June of 2002. See Pl.'s Exh. D. Plaintiff further contended that his October 23, 2002 letter was sufficient to revoke his acceptance of the vessel. Plaintiff argues that he sent the letters within a reasonable time after learning of the defects and before the condition of the vessel had been substantially changed. Plaintiff also sent another letter dated February 6, 2004, reiterating his revocation. Plaintiff further argues that it was reasonable for him to assume that the vessel's non-conformities would be seasonably cured by Defendant, in light of the course of dealing and oral representations made to him by Defendant's agents. Without authority in support of his position, Plaintiff argued that although Plaintiff never physically tendered possession of the vessel,

Plaintiff had reserved his right to revoke his acceptance of the vessel by sending his June 2002 letter.

Although the timeliness of one's revocation of acceptance is usually a factual question that cannot be resolved summarily, see RIJ Pharm. Corp. v. Ivax Pharms., Inc., 322 F. Supp. 2d 406 (S.D.N.Y. 2004), the circumstances presented herein are so wholly inconsistent with a revocation of acceptance, that the Court is compelled to grant Defendant's motion for summary judgment on this claim.

First, Plaintiff admittedly has never tendered possession of the vessel to the seller. See Curtis v. Fordham Chrysler Plymouth, Inc., 81 Misc. 2d 566, 568 (Civ. Ct. Bronx County 1975). Even if the Court accepted Plaintiff's assertions that he had validly revoked his acceptance and constructively "tendered possession" by his June and October 2002 letters and his inability to use his vessel for portions of the 2002 boating season by reason of the port-risk policy imposed by his insurer, Plaintiff continued to use the vessel during the 2003, 2004, and 2005 boating seasons. Plaintiff has by his own admission continued to use and exercised exclusive ownership over the vessel. Under New York UCC § 2-602(2)(a), "after rejection any exercise of ownership by the buyer . . . is wrongful as against the seller." Thus, continued use by a purchaser of a complained of product is insufficient to reject the product and avoid acceptance.

See, e.g., Computerized Radiological Servs. v. Syntex Corp., 786 F.2d 72 (2d Cir. 1986); Shokai Far East, Ltd. v. Energy Conservation Sys., Inc., 628 F. Supp. 1462, 1466 (S.D.N.Y. 1986).

The Court finds as a matter of law that Plaintiff's continued use of the vessel is inconsistent with his attempted revocation of acceptance and defeats his claim for revocation or rescission. As such, Defendant's motion for summary judgment on Plaintiff's fifth cause of action is granted.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment is granted in part and denied in part.  Summary judgment is granted as to Plaintiff's first, third, fourth, and fifth causes of action, and denied as to Plaintiff's second cause of action.

SO ORDERED.

                                              s/s Thomas C. Platt
                                              Thomas C. Platt, U.S.D.J.

Dated:  Central Islip, New York
        April 20, 2006